40 F.3d 973
 Robert CHILDERS and Mary Beth Childers, individually; and
Robert Childers and Mary Beth Childers, as Personal
Representatives of the Estate of David Childers, deceased;
and Robert N. Childers and Mary Beth Childers, Guardians Ad
Litum for Luke Childers and Christa Childers, Minors,
Plaintiffs-Appellants,
v.
UNITED STATES of America, representing Yellowstone National
Park Service, Defendant-Appellee.
 No. 93-35831.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 6, 1994.
Memorandum Nov. 2, 1994.
Order and Opinion Nov. 30, 1994.
As Amended Jan. 17, 1995.
 
 Robert L. Jovick, Livingston, MT, for plaintiffs-appellants.
 Rupert M. Mitsch, U.S. Dept. of Justice, Washington, DC, for defendant-appellee.
 Appeal from the United States District Court for the District of Montana.
 Before LAY,* TROTT and T.G. NELSON, Circuit Judges.
 ORDER
 The memorandum disposition filed November 2, 1994, is redesignated as an authored opinion by the Honorable Donald P. Lay.
 OPINION
 LAY, Circuit Judge:
 
 
 1
 This is an appeal from the trial court's judgment in favor of the United States in a negligence action brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. Secs. 2671-2680, involving the death of David Childers, age 11, in a winter hiking accident in Yellowstone National Park ("Yellowstone"). The action was brought by his mother and father as representatives of his estate in their own name and as guardian ad litem for the deceased's brothers and sisters (collectively, "the Childers").
 
 
 2
 The district court entered a judgment in favor of the United States, finding for the defendant on five separate grounds. First, the court held the discretionary function exception to the FTCA, 28 U.S.C. Sec. 2680(a), bars claims relating to the National Park Service's ("the NPS") treatment of Yellowstone's unmaintained winter trails. Next, even if the United States were not immune from liability, the court found the NPS had no duty to warn of the dangers associated with snow and ice under Wyoming law. In addition, the court determined the NPS's management of the Lower Trail (where the accident occurred) was reasonable, and thus within the applicable standard of care. The court also found the Childers' own negligence in ignoring warnings and permitting the children to run ahead of the adults, and David's climbing in an obviously dangerous situation bars recovery. Finally, the court added that because NPS regulations allowed David to enter the Park free of charge, the Wyoming Recreational Use Statute, Wyo. Stat. Sec. 34-19-105 (1977) which bars claims by visitors who enter on land without charge, also prevents recovery.
 
 
 3
 Title 28 U.S.C. Sec. 2680(a)--"The Discretionary Exception"
 
 
 4
 The Childers argue the district court erred in finding the United States immune from suit because the NPS's treatment of winter trails fell within the discretionary function exception to the FTCA. The United States argues NPS's actions clearly fell within this exception, and therefore this action should be dismissed for lack of subject matter jurisdiction.
 
 
 5
 The FTCA provides a general waiver of the federal government's sovereign immunity when its employees are negligent within the scope of their employment, under circumstances in which a private person "would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. Sec. 1346(b). This waiver of immunity is limited by the discretionary function exception, which states that the FTCA waiver is not applicable to "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. Sec. 2680(a).
 
 
 6
 If a federal statute, regulation, or policy specifically prescribes a course of conduct, the discretionary function exception will not apply. Berkovitz v. United States, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958-59, 100 L.Ed.2d 531 (1988). If choice or judgment are allowed, however, the exception protects the ability of the employee to act according to that decision. Id. In addition, assuming the employee's conduct or omission involves an element of judgment, "a court [then] must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." Id. The exception only protects decisions based on public policy considerations; in other words, " 'decisions grounded in social, economic, and political policy.' " Id. at 537, 108 S.Ct. at 1959 (quoting United States v. Varig Airlines, 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984)).[1]
 
 
 7
 The district court concluded the first prong of Berkovitz was satisfied because the statutes and procedures under which NPS employees operate in determining whether to post signs or close trails require significant discretion and judgment. For example, 16 U.S.C. Sec. 1 requires the NPS to balance preservation and public access, forcing it to "exercise judgment and choice about what sorts of facilities and safety features, if any, to provide." Childers v. United States, 841 F.Supp. 1001, 1014 (D.Mont.1993). In addition, the Yellowstone Ranger Operating Procedure requires park personnel to weigh public access against visitor safety, and the Loss Control Management Program commits the NPS to providing a reasonably safe environment while, at the same time, protecting resources and processes which may be dangerous. Id. at 1014-15.
 
 
 8
 The court held Berkovitz's second prong was satisfied because these decisions "inherently require a balancing of public policy objectives, such as resource allocation, visitor safety and visitor access." Id. at 1016. The NPS balanced these types of policy considerations when deciding to leave the Lower Trail open, but not to maintain it or post warnings on it. As the court noted, other courts have also found trail closure, maintenance, and warning sign decisions fall within the discretionary function exception.[2]
 
 
 9
 The Childers argue the court misapplied Berkovitz. After citing testimony and evidence that the NPS knew how dangerous the Lower Trail was in winter, the Childers assert the failure to warn of known dangers is not a discretionary balancing of public policy concerns. The Childers cite Summers v. United States, 905 F.2d 1212 (9th Cir.1990), and Boyd v. United States ex rel. U.S. Army, Corps of Engineers, 881 F.2d 895 (10th Cir.1989), for this proposition. In Summers, the Ninth Circuit held the Government's failure to post a sign to warn of the risk of stepping on hot coals left in fire rings was not the result of a decision reflecting policy considerations. 905 F.2d at 1215. Rather, this failure was merely a departure from safety regulations, and thus, not within the scope of the discretionary function exception. Id. at 1216.
 
 
 10
 In Boyd, the Tenth Circuit held the failure of the Army Corps of Engineers to warn swimmers of dangerous conditions in a popular swimming area was not within the exception because the omission did not involve an exercise of policy judgment. 881 F.2d at 898. The Tenth Circuit stated in Smith v. United States that "the Government's decision, as a landowner, not to warn of the known dangers or to provide safeguards cannot rationally be deemed the exercise of a discretionary function." 546 F.2d 872, 877 (10th Cir.1976).
 
 
 11
 Furthermore, the Childers argue the Government's decision not to warn of hazards failed Berkovitz's first prong because NPS's safety, trails, and sign manuals require the installation of warning signs, rather than leaving these decisions to the agency's discretion.[3] Thus, they contend the NPS's violation of its own mandatory safety standards is not within the purview of the exception.
 
 
 12
 The United States responds that NPS decisions not to post warning signs or close the Lower Trail were clearly a result of park rangers' discretionary balancing of the competing policy concerns outlined in 16 U.S.C. Sec. 1 as well as in park regulations. The United States also asserts the Ninth Circuit recognizes that NPS decisions regarding guardrails fall within the discretionary exception. See ARA Leisure Servs. v. United States, 831 F.2d 193, 195 (9th Cir.1987); see also Fahl v. United States, 792 F.Supp. 80 (D.Ariz.1992) (stating the NPS has flexibility to make policy judgments concerning guardrails and warning signs). In addition, the United States argues that Boyd and Summers are inapposite in this context, because they concerned mere departure from safety regulations which did not involve policy choices, while the NPS decisions here are inextricably linked to central policy questions of how to manage unmaintained trails.
 
 
 13
 Finally, the United States echoes the district court's finding that the Childers' reliance on Smith is misplaced. First, Smith has questionable value after Varig's application of the exception to the decisions of low-level employees. Also, more recent Tenth Circuit decisions confirm that NPS decisions not to warn against dangers, which are based on public policy considerations, are protected by the exception.[4]
 
 
 14
 The district court found that the NPS's decisions concerning warnings, trail maintenance, and trail closure were linked to the rangers' area plan. On this basis the court determined they were based on a number of public policy factors. Although the Childers insist that several park guidelines make the posting of warning signs and other decisions nondiscretionary, the record points to a statute (16 U.S.C. Sec. 1), regulations, and guidelines which leave these decisions, either explicitly or implicitly, in the hands of NPS rangers. Their decisions are policy-based, requiring them to balance access with safety, and take into account conservation and resources in designing area plans and making individual trail determinations.
 
 
 15
 This case is unlike Boyd, Smith, and Summers, where the courts found no evidence the decisions were based on public policy concerns. It is, on the contrary, closely analogous to Kiehn and Johnson, where the Tenth Circuit found the exception applied because the particular decisions not to post warning signs were part of an overall NPS plan based on a number of public policy factors. The decisions NPS made in this case reflected its determination of how best to manage the park in winter. Unable to maintain all the trails in the park, cognizant that posting warning signs would inadvertently attract visitors to unmaintained trails, and unable to post signs throughout the park, NPS could only decide to close large portions of the park, or to keep the park open, provide visitors with information on the hazards, and take steps to discourage visitors from going to hazardous areas.[5]
 
 
 16
 Childers argues that the government safety manual provided: "If roads and trails cannot be maintained as designed and built, they should either be closed or the public adequately warned." (Exhibit EX50, Chapter 12:1.1). Under this regulation, the NPS was required either to close the trails or adequately warn the public. As the trail in question was not closed, the manual required adequate warnings. The discretionary exception would not apply if the NPS ignored the safety manual's mandate that the public be "adequately warned." However, decisions as to the precise manner in which NPS would warn the public as to trails which are left open, but unmaintained in the winter, clearly fall within the discretionary function exception. As the district court observed "no regulations or guidelines required the Park Service to place warnings along a trail." See Childers v. United States, 841 F.Supp. 1001, 1020 (D.Mont.1993). In this case, the NPS did provide warnings through park brochures, visitor center displays, bulletin board information, and personal contacts.
 
 
 17
 Park rangers used their discretion to balance, within the constraints of the resources available to them, a statutory mandate to provide access with the goal of public safety. This decision was precisely the kind the discretionary function exception was intended to immunize from suit.
 
 
 18
 We find the discretionary function exception applies, and we need not address the Childers' other arguments. We affirm the district court's judgment in favor of the United States.
 
 
 19
 AFFIRMED.
 
 
 
 *
 Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 The application of the exception does not depend, however, on whether federal officials actually took public policy considerations into account. All that is required is that the applicable statute or regulation gave the government agent discretion to take policy goals into account. United States v. Gaubert, 499 U.S. 315, 324-25, 111 S.Ct. 1267, 1274-75, 113 L.Ed.2d 335 (1991). The Gaubert Court also clarified that low-level employees making discretionary day-to-day management decisions based on policy considerations also fall within the exception. Id. at 325, 111 S.Ct. at 1275
 
 
 [2]
 See, e.g., Kiehn v. United States, 984 F.2d 1100 (10th Cir.1993) (holding the Government immune from suit because the decision to post warning signs about the danger of scaling cliffs at Dinosaur National Monument is part of an overall park plan left to the discretion of the NPS); Johnson v. United States, 949 F.2d 332 (10th Cir.1991) (dismissing action for lack of subject matter jurisdiction because the NPS's determinations about warning sign placement were discretionary acts)
 
 
 [3]
 The Childers cite provisions on signing, maintenance, and railing upkeep in the Trails Management Handbook, the NPS Sign Manual, and the NPS-50 Safety Manual
 
 
 [4]
 See, e.g., Kiehn and Johnson, supra, note 7
 
 
 [5]
 Yellowstone covers over 2.2 million acres and contains approximately 97 trails ranging over 1,200 miles in length. The Canyon area alone has 18 hiking trails stretching over 130 miles. In the winter, there are a small number of marked and maintained trails, and a large number of unmaintained trails. The length of the trails, winter conditions, and limited resources make maintaining all of the trails impossible. Subdistricts of the park promulgate winter operation plans by laying out a number of priorities which available staff can reasonably complete. Although unmaintained trails get some public use, the NPS does not put up signs along them warning about winter dangers because it is impractical in such a large area and the signs may attract visitors and mislead them into believing the trails are inspected and maintained