BRISCOE, Circuit Judge,
concurring and dissenting:
I concur in part and dissent in part. I agree that plaintiffs’ claims against the State of New Mexico are barred by the Eleventh Amendment. However, contrary to the majority, I would affirm the district court’s dismissal of the claim against the United States under the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a).
The facts of this case are tragic. Six-year-old Joel Ray Duke was severely injured when a boulder rolled down an embankment and crushed his skull while he was camping with his family in the emergency spillway for Quemado Lake Dam during a heavy rainstorm. As the majority notes, it would have cost little to erect a warning sign or a sign prohibiting camping. However, application of the discretionary function exception does not depend on the magnitude of the injury or the ease with which it could have been prevented. When the exception applies, it applies without regard to whether the discretion involved is abused. 28 U.S.C. § 2680(a).
*1413 We use the two-prong analysis of Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), to determine whether the discretionary function exception applies to eases brought pursuant to the FTCA. We first determine “whether the action at issue was one of choice for the government employee” or agency. Tippett v. United States, 108 F.3d 1194, 1196 (10th Cir.1997). I agree with the majority that this first step is satisfied in this case. The second prong of the Berkovitz test requires an inquiry into whether the judgment at issue is of the type the exception is designed to shield. Id. The focus of our analysis is the nature of the action taken and whether it is subject to policy analysis. Only decisions susceptible to policy analysis are protected by the discretionary function exception. Id. at 1197-98.
Where the record shows policy considerations implicitly or explicitly weigh in the decision not to erect warnings, the discretionary function exception applies without regard to whether the specific danger involved was known. See Zumwalt v. United States, 928 F.2d 951, 955-56 (10th Cir.1991); see also Kiehn v. United States, 984 F.2d 1100, 1104 (10th Cir.1993). Thus, where the decision not to place warning signs is part of some “overall policy,” the discretionary function exception applies. E.g., Kiehn, 984 F.2d at 1104; Zumwalt, 928 F.2d at 955; see Childers v. United States, 40 F.3d 973, 975 (9th Cir.1994) (failure to place signs part of overall park service plan; discretionary function exception applies).
The majority rejects the government’s argument that the second prong of the Berko-vitz test is satisfied, finding “[a]t this stage the government has not shown how failure to warn or protect from danger of a boulder rolling down the man-made slope implicated ‘political, social, or economic decisions of the sort that the exception was designed to protect.’ ” Majority op. at 1412. Thus, the majority places the burden of establishing the second prong of the discretionary function exception on the government. The majority also looks to whether the particular injury involved actually implicated policy concerns. I respectfully disagree with the majority’s approach in both instances. First, when the challenged government action passes the first prong of the Berkovitz test — when the government agent is permitted to exercise discretion — “it must be presumed that the agent’s acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime.” Gaubert, 499 U.S. at 324-25, 111 S.Ct. at 1274-75. In relying on the government’s failure to present proof, the majority ignores the presumption to which the government is entitled under Gaubert. In addition, by concentrating on whether the failure to warn of a particular danger was actually based on policy reasons, the majority ignores that our inquiry is whether the type of action in question is “susceptible to policy analysis,” and not whether policy analysis is the actual reason for the decision in question. “The focus of the inquiry is not on the agent’s subjective intent in exercising the discretion ... but on the nature of the actions taken and on whether they are susceptible to policy analysis. Id. at 325, 111 S.Ct. at 1275. Consequently, “[t]he lack of record evidence describing an analysis of public policy factors in the ... decision not to post warnings,” which the majority relies on, “is immaterial.” Kiehn, 984 F.2d at 1105.
The government asserts broadly that its discretionary decision regarding “warning signs, fences, or other closures require[s] consideration of public policy factors.” Ap-pellees’ br. at 17. Cf. Childers v. United States, 841 F.Supp. 1001, 1016 (D.Mont.1993), aff'd 40 F.3d 973 (9th Cir.1994) (decisions “inherently require” balancing of public policy). The government offers no policy-specific considerations involved in the challenged decisions of the forest service. Rather, the government rests on the presumption of policy-based reasoning as described in Gaubert and applied by this court in Kiehn and Daigle v. Shell Oil Co., 972 F.2d 1527, 1542 (10th Cir.1992). Plaintiffs do not argue they have presented evidence sufficient to overcome this presumption.
Two particular cases in this circuit stand out as arguably inconsistent with giving the government the benefit of a presumption of policy-based reasoning in failing to erect *1414 warning signs. In Smith v. United States, 546 F.2d 872, 874 (10th Cir.1976), plaintiff fell into a super-heated thermal pool at Yellowstone National Park. He filed a FTCA claim, alleging the park service failed to provide adequate warnings and failed to erect guardrails and other precautions. Despite the government’s contention that the decision not to provide warning signs implemented a policy to conserve the scenery and leave the area undeveloped, this court held the discretionary function exception did not apply. Id. at 876-77. Although our current jurisprudential approach to the discretionary function exception would not follow the same reasoning, we have not overruled or criticized Smith, but instead have said it stands for the limited proposition that failure to warn resulting only from failure to recognize a potentially dangerous condition does not implicate a policy analysis and does not invoke the discretionary function exception. See, e.g., Zumwalt, 928 F.2d at 955 n. 5; see also Summers v. United States, 905 F.2d 1212 (9th Cir.1990) (failure to warn based on failure to consider danger, rather than direct choice not to erect sign for policy reasons not protected as discretionary function). The present case does not come within the rule we extract from Smith, a rule which we have yet to apply. See Weiss v. United States, 889 F.2d 937, 939 n. 2 (10th Cir.1989) (fact that failure to warn was result of failure to consider issue was of no moment where policy-based decision implicitly precluded warning). Plaintiffs’ case here is premised on the allegation that the government had knowledge of the dangerous condition of the area in which plaintiffs camped but negligently failed to act. They do not maintain, as the Smith rule would require, that the government simply failed to detect the danger without regard to policy considerations. In ruling on the government’s initial motion for summary judgment, the district court ruled the evidence established the government knew of the dangerous condition.
In Boyd v. United States, 881 F.2d 895 (10th Cir.1989), a swimmer was injured by a boat and claimed the government had a duty to warn of the danger since the government permitted boating in known swimming areas. This court rejected the government’s argument that a decision whether to warn was a policy decision linked to the decision of what activities would be allowed in the area. This court found the decision regarding warnings was independent of the decision regarding permissible activities. In Boyd, the government apparently identified no policy directly related to a failure to warn swimmers of known dangers. Like Smith, we have consistently distinguished Boyd in subsequent cases, while simultaneously finding it good law on the proposition that when no policy considerations could be identified in connection with a failure to warn, the discretionary function exception is inapplicable. See, e.g., Zumwalt, 928 F.2d at 955 n. 6. However, Boyd and the rule now extracted from Boyd do not integrate the presumption of policy-based reasoning subsequently explained by the Supreme Court in Gaubert and applied by this court in Kiehn.
Resolution of this case turns on whether we are willing, as I am, to permit a presumption that the government’s inaction was based in policy as required by the Supreme Court in Gaubert, or whether we are willing instead, as the majority is, to hold absence of affirmative evidence of policy reasoning in the record defeats the discretionary function exception as in this court’s earlier case of Boyd. Even if Boyd remains good law, after Gaubert it can be readily distinguished from this case. In Boyd, the government did not proffer and the court could not find that policy-based reasoning could be involved in the decision not to erect the warning sign at issue. Here, the government does not proffer a specific policy-based reason for the decision at issue but rather relies on the general statutes and regulations concerning forest management to argue its decisions regarding signage and safety are within the realm of discretion bounded by these statutes and regulations.
Guided by the language in Gaubert, 499 U.S. at 324-25, 111 S.Ct. at 1274-75 that “[f]or a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded” in policy, I would affirm. Plaintiffs’ theory of liability is premised on the government’s knowledge of the danger. We cannot say decisions concerning how various dangers on public lands are ameliorated *1415 are the type of actions that cannot be said to be grounded in social, economic, or political policy. It is enough that forest service policies on signage and safety are sufficiently broad to permit the forest service to take public policy goals into account. See Gaubert, 499 U.S. at 324-25, 111 S.Ct. at 1274-75; Childers, 40 F.3d at 974 n. 1 (citing Gaubert for proposition that “[a]ll that is required is that the applicable statute or regulation gave the government agent discretion to take policy goals into account”). In applying the second prong of the Berkovitz test, it is critical to keep in mind its purpose to “prevent judicial ‘second guessing’ of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.” 486 U.S. at 536-37, 108 S.Ct. at 1958-59. Considering the manifold potential dangers in public lands, whether arising by natural processes or, as here, by a combination of natural processes and human intervention, there is an element of judicial second-guessing of an administrative decision in a judicial determination concerning which dangers limited resources should be used to addressed.
I would affirm the district court’s dismissal of this case.